1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SENA MAE FERTIG,                        Case No.  1:21-cv-01390-CDB (SS)

12              Plaintiff,                    ORDER DENYING PLAINTIFF'S MOTION
                                             FOR SUMMARY JUDGMENT AND
13       v.                                   AFFIRMING THE DECISION OF THE
                                             COMMISSIONER OF SOCIAL SECURITY
14   COMMISSIONER OF SOCIAL
     SECURITY,[1]                             (Doc. 15)
15
                Defendant.
16

17

18        Sena Mae Fertig ("Plaintiff") seeks judicial review of a final decision of the

19   Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

20   supplemental security income benefits under the Social Security Act.  (Doc. 1).  Plaintiff alleges

21   disability beginning February 1, 2017.  (Administrative Record ("AR") at 38, 80).  The matter

22   currently is before the Court on the certified administrative record (Doc. 12) and the parties'

23   briefs, which were submitted without oral argument.  (Docs. 15, 17-18).[2]

24   _____

25        [1] On December 20, 2023, Martin O'Malley was named Commissioner of the Social
     Security Administration.  *See* https://www.ssa.gov/history/commissioners.html. He therefore is
26   substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the
     "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the
27   Commissioner shall, in [their] official capacity, be the proper defendant.").

28        [2] All parties have consented to the jurisdiction of a magistrate judge for all proceedings in

# I.    BACKGROUND

## A. Administrative Proceedings

On January 30, 2019, Plaintiff filed an application for benefits pursuant to Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.*  (AR at 202-07).  Plaintiff was 53 years old on the alleged disability onset date.  *Id*. at 80.  The Commissioner denied Plaintiff's application initially and again on reconsideration.  *Id*. at 80-87, 89-100.  Plaintiff submitted a written request for a hearing by an Administrative Law Judge ("ALJ") on August 16, 2019.  *Id*. at 127.

On October 27, 2020, Plaintiff represented by counsel, appeared for a hearing before ALJ Mary P. Parnow.  *Id*. at 51-79.  Vocational Expert ("VE") John Komar and Hearing Reporter Margaret Buckley also appeared at the hearing.  *Id*.

## B. Medical Record

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

## C. Hearing Testimony

At a hearing before the ALJ, Plaintiff testified that she was a legal protester for the carpenters' union hall in 2007 during which time she would hold signs for six hours a day for four days a week.  *Id*. at 58.  Plaintiff claims she held the sign with two other people, and it weighed "maybe five pounds."  *Id*. at 59.  Plaintiff testified she is unable to work because she can't grasp things and hold them tightly in her hands anymore.  *Id*. at 59, 63.  Plaintiff noted she would be unable to pick up and carry a gallon of milk with her left hand.  *Id*. at 63.  Plaintiff testified she has arthritis in her hands and experienced pain in her hands every day.  *Id*. at 62.

Next, Plaintiff testified she has neck issues and has difficulty standing for long without "excruciating pain."  *Id*. at 59.  Plaintiff asserted she could stand for 20 to 30 minutes before she had to sit down.  *Id*. at 67.  Plaintiff also claimed she has neck pain while sitting.  *Id*. at 61.  Plaintiff noted she can sit for maybe 45 minutes without problem if she is sitting straight and

this action, in accordance with 28 U.S.C. § 636(c)(1).  (Doc. 11).

2

1 avoids twisting her head.  *Id*. at 67.  Plaintiff testified she has difficulty turning her head right,

2 left, up, and down.  *Id*. at 68.

3      Plaintiff stated she thought all her neck problems started when she was 15 and that she

4 constantly has neck pain every day and goes through traction.  *Id*. at 60, 63.  Plaintiff noted she

5 was prescribed a Cervitrac, an inflatable neck brace for her neck that "inflates" and raises her

6 neck because she had "cartilage between any of [her] vertebrate in [her] neck; it's bone on bone

7 grinding."  *Id*. at 61.  Plaintiff noted she "[does] this Cervitrac for 30 minutes in the morning and

8 30 minutes in the evening, and if she did any strenuous work whatsoever during the day, [she

9 had] to take a timeout and do it then to."  *Id*. at 60.  Plaintiff indicated the Cervitrac relieved some

10 of the issues but did not relieve her pain.  *Id*.  Plaintiff testified she took ibuprofen for her neck

11 pain which reportedly did "not really" help her pain but "it eases it."  *Id*. at 62.  Plaintiff claimed

12 she had discussed a procedure to fuse her neck vertebrate.  *See id*. at 60 ("They're talking about

13 wanting to fuse my neck vertebrae together.").

14      Plaintiff also testified she has pain in her left shoulder all the time.  *Id*. at 62.  Plaintiff

15 noted she could not lift her left arm halfway up her body.  *Id*.  Plaintiff noted she cannot lift her

16 left arm over her head and can only lift "maybe three pounds from that arm."  *Id*. at 59-60, 67.

17 Specifically, Plaintiff claimed she could not lift and carry too much weight with her left arm and

18 left shoulder because it added weight to her neck.  *Id*. at 62.

19      Plaintiff also testified she has had a heart problem and chest pain due to a diagnosis of

20 unstable angina.  *Id*. at 64.  Plaintiff noted this condition causes her to pass out without warning.

21 and that she would be out for a couple of minutes.  *Id*. at 64-65.  Plaintiff testified that after she

22 passes out it takes her a second to gain her composure and senses.  *Id*.  Plaintiff noted she goes to

23 sleep after she passes out.  *See id*. at 65 ("I go to sleep.  I want to sleep after that.").  Plaintiff

24 testified she took medication for her heart, and it helped somewhat.  *Id*.  Plaintiff claimed she had

25 not had an episode in about three months leading-up to her October 2020 testimony.  *Id*.

26      Plaintiff separately testified she has experienced migraines since she was 15.  *Id*. at 63.

27 Plaintiff noted she would get "[p]robably three, four migraines a month at least, if not more."  *Id*.

28 Plaintiff asserted her migraines last on average eight hours and cause her to get sick, throw up,

and "can't stand the light." *Id*. at 64. Plaintiff testified that when she experiences a migraine she applies a cold rag to the back of her neck, tries to make everything quiet, darkens the room, lies down, and tries to go to sleep. *Id*. Plaintiff testified none of her actions help with her migraines. *Id*. Plaintiff also noted that she has taken medicine for her migraines but that it was discontinued because it negatively interacted with her heart problems. *Id*.

Plaintiff also claimed she experiences asthma and chronic obstructive pulmonary disease ("COPD"). *Id*. at 66. Plaintiff noted she used an inhaler for her asthma and COPD. *Id*. at 66-67. Plaintiff testified that on a good air-quality day, she could probably walk one and one-half blocks and that on a bad air-quality day, she can walk only one-half block. *Id*. Plaintiff noted whether she was standing, walking, or sitting, she was unable to find comfort and that "[it was] going to hurt [no] matter what," and that her pain limits her sleep. *Id*. at 68-69.

With respect to activities of daily living, Plaintiff testified she does not drive a vehicle. *Id*. at 68. Plaintiff claimed she is able to do all her personal hygiene, albeit at a slow pace, can cook and prepare meals for herself, and can engage in household chores. *Id*. at 69-70. Plaintiff noted she could do dishes but had to take a break and that she could mop the floor but would need "to sit down in like thirds because I'm out of breath come I can't breathe." *Id*. Plaintiff claimed she can vacuum, dust, and do laundry "as long as they're small loads." *Id*.

The VE testified Plaintiff worked as a labor union picket, DOT number 299.687-014, SVP of 1, light exertion. *Id*. at 72. The ALJ proffered a hypothetical to the VE of an individual with the same age, education, and work experience as Plaintiff and who is capable of medium work with no limitation on climbing ramps and stairs, balancing, stooping, kneeling, and crouching. *Id*. The individual can frequently crawl but cannot climb ladders, ropes, and scaffolds, can no more than frequently reach overhead, and would have a limitation in the left upper extremity, which is the nondominant upper extremity. *Id*. at 72-73. The VE determined that an individual with such limitations could work as a labor union picket as generally or actually performed. *Id*. The VE also found that the individual could perform work in several fields, including as a hospital cleaner, kitchen helper, and courtesy clerk. *Id*.

The ALJ proffered a second hypothetical of an individual similar to the first hypothetical

4

1    but with additional limitations that "reaching overhead with the left upper extremity is now

2    reduced to occasional, and handling, fingering and feeling limited to frequently bilaterally." *Id.*

3    The VE indicated that an individual with such limitations could also perform the work of the

4    three jobs identified in response to the first hypothetical. *Id*. at 74.

5        Plaintiff's counsel proffered a third hypothetical of an individual similar to the ALJ's

6    second hypothetical, with the exertion changed "medium down to light…[] lifting 20 pounds,

7    standing, walking for six of eight hours, sitting for six of eight hours." *Id*. at 75.  Additionally,

8    Plaintiff's counsel added that this individual should be limited to no concentrated exposure to

9    pulmonary irritants, such as dust, fumes, et cetera.  *Id*.  The VE noted with the pulmonary

10   restrictions that individual would not be able to do the job of a labor union picket.  *Id*. at 75-76.

11   The VE also noted the individual would be unable to perform the work of the three jobs identified

12   in response to the first hypothetical if limited to light work.  *Id*. at 76.

13       The ALJ proffered a fourth hypothetical of an individual similar to the second

14   hypothetical who must avoid moderate exposure to fumes, odors, dust, gases, poor ventilations,

15   and other pulmonary irritants.  *Id*. at 76.  The VE reported that individual could work as a

16   courtesy clerk, but not as a kitchen helper or hospital cleaner.  *Id*. at 77.  The VE noted that

17   individual also could work as a canner packager and a store laborer.  *Id*.

18       The ALJ proffered a fifth hypothetical of an individual similar to the fourth hypothetical

19   who was precluded from complex and detailed tasks but could understand and carry out simple,

20   repetitive tasks and routine work environment.  *Id*.  The VE reported the jobs provided in

21   response to hypothetical four were still compatible.  *Id*.

22       **D. The ALJ's Decision**

23       On January 7, 2021, the ALJ issued a decision finding that Plaintiff was not disabled.  *Id*.

24   at 38-45.  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §

25   404.1520(a). *Id*. at 40-45.  At step one, the ALJ found Plaintiff had not engaged in substantial

26   gainful activity since January 30, 2019 (*e.g.*, Plaintiff's application date).  *Id*. at 40.  The ALJ

27   found Plaintiff possessed the following severe impairments: hepatitis, asthma, left shoulder

28   internal derangement, cervical degenerative disc disease, migraine, and methamphetamine use in

1  remission (step two).  *Id*.

2       Next, the ALJ determined Plaintiff did not have an impairment or combination of

3  impairments that meets or medically equals the severity of one of the listed impairments in 20

4  C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  *Id*. at 41.  The ALJ then

5  assessed Plaintiff's residual functional capacity ("RFC").  *Id*. at 41-42.  The ALJ found that

6  Plaintiff retained the RFC:

7       "to perform medium work as defined in 20 CFR 404.1567(c) except with the
        following limitations: no climbing ladders, ropes or scaffolds; frequently crawl;
8       occasionally reach overhead with left upper extremity; frequently perform handling,
        fingering and feeling bilaterally; avoid moderate exposure to fumes; perform no
9       complex or detailed tasks; and is able to understand, remember and carry out simple
        repetitive tasks in a routine work environment. Occasionally is defined as occurring
10      from very little up to one-third of the time, or approximately 2 hours in an 8-hour
        workday. Frequently is defined as occurring from one-third to two-thirds of the time
11      or approximately 6 hours in an 8-hour workday."

12

13  *Id*.  The ALJ acknowledged that while Plaintiff's impairments could reasonably be expected to

14  cause her alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and

15  limiting effects of her symptoms were not entirely consistent with the medical evidence and other

16  evidence in the record.  *Id*. at 42.

17       The ALJ determined objective diagnostic studies revealed no acute findings and that

18  Plaintiff "had scant follow up diagnostic workup and treatment."  *Id*. at 43.  The ALJ noted the x-

19  ray study of Plaintiff's left shoulder was "considered essentially unremarkable."  *Id*.  The ALJ

20  found Plaintiff had been prescribed medication for hepatitis and that hepatitis C was in remission

21  by 2002.  *Id*.  The ALJ also noted Plaintiff did not have episodes of asthma exacerbation requiring

22  urgent care, even though she continued to smoke and reportedly only ceased smoking in August

23  2019.  *Id*.  The ALJ acknowledged that while Plaintiff's "treatment notes contained entries noting

24  migraine, the record lacks a log of the claimant's migraines or longitudinal treatment notes

25  documenting trials of medications and effectiveness of treatment."  *Id*.  The ALJ also referred to

26  record evidence that Plaintiff had clinical findings of "normal gait, normal neck examination,

27  normal respiratory examination, no edema, visually normal extremities, normal heart sounds, 5/5

28

motor strength in bilateral upper and lower extremities and no gross sensory or motor deficits." *Id*.  The ALJ noted that despite Plaintiff's reports of severe pain, treatment notes documented reports of pain varying from 0 to 3 on a scale of 10 and that she was not prescribed severe pain medication.  *Id*.  The ALJ also discounted Plaintiff's testimony because Plaintiff had received limited conservative treatment that she reported was beneficial.  *Id*.  The ALJ noted Plaintiff "lives alone and she is able to clean, shop and do laundry."  *Id*.

The ALJ considered the report of State Agency Physician Dr. A. Khong and found it less persuasive because the record established severe impairments.  *Id*. at 44.  The ALJ considered the opinion of State Agency Physician Dr. D. Tayloe and found it persuasive because objective diagnostic studies and clinical findings supported Dr. Tayloe's opinions.  *Id*.  The ALJ determined the opinions of Plaintiff's treatment providers were persuasive because they had the opportunity to treat Plaintiff.  *Id*.

The ALJ concluded that the RFC assessment was supported by treatment notes, objective diagnostic studies, clinical findings, and Plaintiff's activities.  *Id*.  The ALJ determined that Plaintiff had no past relevant work (step four) but could perform a significant number of other jobs in the national economy, including hospital cleaner, kitchen helper, and courtesy clerk (step five).  *Id*. at 44-45.  The ALJ concluded Plaintiff has not been under a disability as defined in the Act.  *Id*. at 45.

### E. The Appeals Council's Decision

On January 7, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  *Id*. at 23-26.  Plaintiff filed this action on September 16, 2021, seeking judicial review of the denial of her application for benefits.  (Doc. 1).  The Commissioner lodged the administrative record on March 30, 2022.  (Doc. 12).  Plaintiff filed an opening brief on May 11, 2022.  (Doc. 15).  On June 27, 2022, Defendant filed a responsive brief and Plaintiff filed a reply on July 11, 2022.  (Docs. 17-18).

## II.     LEGAL STANDARD

### A. The Disability Standard

Disability Insurance Benefits and Supplemental Security Income are available for every

1   eligible individual who is "disabled."  42 U.S.C. §§ 402(d)(1)(B)(ii) and 1381(a).  An individual

2   is "disabled" if unable to "engage in any substantial gainful activity by reason of any medically

3   determinable physical or mental impairment …"[3]  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987)

4   (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  To

5   achieve uniformity in the decision-making process, the Social Security regulations set out a five-

6   step sequential evaluation process to be used in determining if an individual is disabled.  *See* 20

7   C.F.R. § 404.1520; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004).

8   Specifically, the ALJ is required to determine:

9
10          (1) whether a claimant engaged in substantial gainful activity during the period of
            alleged disability, (2) whether the claimant had medically determinable "severe"
11          impairments, (3) whether these impairments meet or are medically equivalent to one
            of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4)
12          whether the claimant retained the residual functional capacity ("RFC") to perform
            past relevant work and (5) whether the claimant had the ability to perform other jobs
13          existing in significant numbers at the national and regional level.

14   *Stout v. Comm'r. Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is

15   on a claimant at steps one through four.  *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citing

16   *Valentine v. Comm'r of Soc. Sec. Admin*, 574 F.3d 685, 689 (9th Cir. 2009)).

17          Before making the step four determinations, the ALJ must determine the claimant's RFC.

18   20 C.F.R. § 416.920(e).  The RFC is the most a claimant can still do despite their limitations and

19   represents an assessment based on all relevant evidence.  20 C.F.R. §§ 404.1545(a)(1);

20   416.945(a)(1)).  The RFC must consider all of the claimant's impairments, including those that

21   are not severe.  20 C.F.R. § 416.920(e); § 416.945(a)(2).  *E.g.*, *Wells v. Colvin*, 727 F.3d 1061,

22   1065 (10th Cir. 2013) ("These regulations inform us, first, that in assessing the claimant's RFC,

23   the ALJ must consider the combined effect of all of the claimant's medically determinable

24   impairments, whether severe or not severe.").  The RFC is not a medical opinion.  20 C.F.R. §

25   404.1527(d)(2).  Rather, it is a legal decision that is expressly reserved to the Commissioner.  20

26
27          [3] A "physical or mental impairment" is one resulting from anatomical, physiological, or
     psychological abnormalities that are demonstrated by medically acceptable clinical and laboratory
     diagnostic techniques.  42 U.S.C. § 423(d)(3).

28
                                                    8

1   C.F.R. § 404.1546(c); *see Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the

2   responsibility of the ALJ, not the claimant's physician, to determine residual functional

3   capacity.").

4        At step five, the burden shifts to the Commissioner to prove that Plaintiff can perform

5   other work in the national economy given the claimant's RFC, age, education, and work

6   experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).  To do this, the ALJ can use

7   either the Medical-Vocational Guidelines or rely upon the testimony of a VE. *Lounsbury v.*

8   *Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006); *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th

9   Cir. 2001).  "Throughout the five-step evaluation, the ALJ 'is responsible for determining

10  credibility, resolving conflicts in medical testimony and for resolving ambiguities.'" *Ford*, 950

11  F.3d at 1149 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

12       **B. Standard of Review**

13       Congress has provided that an individual may obtain judicial review of any final decision

14  of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In

15  determining whether to reverse an ALJ's decision, a court reviews only those issues raised by the

16  party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  A

17  court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on

18  legal error or are not supported by substantial evidence. *Tackett v. Apfel*, 180 F.3d 1094, 1097

19  (9th Cir. 1999).

20       "Substantial evidence is relevant evidence which, considering the record as a whole, a

21  reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278

22  F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453,

23  1457 (9th Cir, 1995)).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v.*

24  *Berryhill*, 139 S. Ct. 1148, 1154 (2019).  Rather, "[s]ubstantial evidence means more than a

25  scintilla, but less than a preponderance; it is an extremely deferential standard." *Thomas v.*

26  *CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted).

27       "[A] reviewing court must consider the entire record as a whole and may not affirm

28  simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153,

1159 (9th Cir. 2012) (internal quotations and citations omitted).  "If the evidence 'is susceptible

to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'"  *Ford*,

950 F.3d at 1154 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).  Even if the

ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.  *Stout*,

454 F.3d at 1055-56.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate

nondisability determinations."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)

(quotation and citation omitted). The burden of showing that an error is not harmless "normally

falls upon the party attacking the agency's determination."  *Shinseki v. Sanders*, 556 U.S. 396,

409 (2009).

### III.     LEGAL ISSUES

Plaintiff presents the following issues for review:

1.  The ALJ violated 20 C.F.R. § 416.929 and SSR 16-3p; despite finding that Plaintiff
    established medically determinable impairments that could reasonably be expected to
    cause restrictions which Plaintiff alleges, the ALJ improperly rejected Plaintiff's
    allegations.

(Doc. 15 at 9-15).  Having reviewed the record, administrative transcript, parties' briefs, and the

applicable law, the Court finds as follows.

### IV.     DISCUSSION

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding

subjective pain or symptoms.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

The ALJ must determine whether there is "objective medical evidence of an underlying

impairment which could reasonably be expected to produce the pain or other symptoms alleged."

*Id*. (internal quotation marks omitted).  "The claimant is not required to show that this impairment

could reasonably be expected to cause the severity of the symptom he has alleged; he need only

show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572

F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the

ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ]

1    gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154,

2    1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are

3    insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

4    undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.

5    1995)); *see Thomas*, 278 F.3d at 958 ("[T]he ALJ must make a credibility determination with

6    findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

7    discredit claimant's testimony.").

8            However, "[t]he standard isn't whether [the] court is convinced, but instead, whether the

9    ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th

10   489, 499 (9th Cir. 2022).  An ALJ's reasoning as to subjective testimony "must be supported by

11   substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir.

12   1995); *see Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Accordingly, our

13   next task is to determine whether the ALJ's adverse credibility finding of Carmickle's testimony

14   is supported by substantial evidence under the clear-and-convincing standard.").

15          Plaintiff argues that the ALJ failed to offer clear and convincing reasons for rejecting her

16   subjective complaints and failed to include work-related limitations in the RFC consistent with

17   the nature and intensity of her limitations.  *Id.* at 11-14.  Plaintiff claims this failure resulted in

18   vocational testimony which was not based on an accurate RFC.  *Id.* at 15.

19          First, Plaintiff argues the ALJ erred in rejecting her testimony based on her daily

20   activities.  (Docs. 15 at 11, 14; 18 at 5).  Plaintiff asserts her ability to live alone, clean, shop, and

21   do laundry does not in any way establish her physical ability to successfully perform full-time

22   work at the medium exertional level.  (Doc. 18 at 5).  In contrast, Defendant argues the ALJ

23   reasonably found that Plaintiff's statements of her activities "detracted from her testimony

24   alleging extreme inactivity."  (Doc. 17 at 7).  Defendant contends it was significant that her

25   activities undermined her testimony.  *Id.*  Defendant claims "the ALJ need not have identified

26   evidence that she could perform full-time work in accordance with the RFC finding in order to

27   rely on the inconsistency of Plaintiff's testimony with her admitted activities."  *Id.* (citing *Molina*

28   *v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012)).

1    An ALJ is "permitted to consider daily living activities" in addressing a Plaintiff's

2    credibility and subjective statements.  *Burch*, 400 F.3d at 681.  Daily activities "form the basis for

3    an adverse credibility determination" when: (1) the daily activities contradict the claimant's other

4    testimony or (2) the daily activities meet the threshold for transferable work skills.  *Orn v. Astrue*,

5    495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).  A

6    claimant need not be "utterly incapacitated" to be eligible for benefits.  *Fair*, 885 F.2d at 603.

7    Thus, for instance, a claimant's engagement in undemanding activities of daily living does not

8    constitute substantial evidence permitting an adverse credibility finding absent a showing of a

9    "meaningful relationship to the activities of the workplace."  *Orn*, 495 F.3d at 639.

10    Here, the ALJ summarily referred to Plaintiff's activities of daily living as a grounds for

11    discounting her testimony, noting that she "lives alone and she is able to clean, shop, and do

12    laundry."  (AR at 43).  But the ALJ undertook no analysis of these activities and the relationship

13    between them and Plaintiff's ability to engage in work.  To meet the substantial evidence

14    standard, an ALJ must identify what parts of Plaintiff's testimony are inconsistent with Plaintiff's

15    activities of daily living and explain where and how the inconsistency arises.  *Treichler v.*

16    *Comm'r of SSA*, 775 F.3d 1090, 1103 (9th Cir. 2014); *Orn*, 495 F.3d at 639; *see Yamada v.*

17    *O'Malley*, No. 1:20-cv-001386-JLT-BAM, 2024 WL 3226798, at *7 (E.D. Cal. June 28, 2024)

18    ("Courts in this district have found that the ALJ erred when the ALJ failed to precisely identify

19    how the daily activities conflicted with symptom testimony.") (citing cases).

20    Defendant argues that Plaintiff's ability to live alone, clean, shop, and do laundry is

21    inconsistent with her testimony "alleging extreme inactivity." (Doc. 17 at 7).  However, the ALJ

22    did not adequately articulate how Plaintiff's ability to engage in these activities undermined her

23    testimony.  *E.g., Yamada*, 2024 WL 3226798, at *7 ("However, the ALJ's discussion of these

24    limited activities does not explain how they contradict Plaintiff's allegations of neck pain, back

25    pain, bending ability, or other limitations.").  Moreover, the record indicates Plaintiff's ability to

26    live alone, clean, shop, and do laundry was limited beyond the ALJ's summary reference.  For

27    instance, while the ALJ acknowledged Plaintiff could clean (AR at 43), Plaintiff testified she

28    needed to take breaks doing dishes and mopping the floor and could no longer do household

duties that involved lifting.  *See* (*id*. at 69-70) ("I will take a break doing dishes.  It takes me probably, in a 12 by 15 room, to mop that floor; I'm going to sit down in like thirds because I'm out of breath come I can't breathe.").  Similarly, while the ALJ noted Plaintiff could do laundry, he did discuss that she could do so "as long as they [were] small loads."  *Id*. at 43, 70.  Likewise, while the ALJ cited Plaintiff's ability to "shop" (*id*. at 43), the ALJ failed to address Plaintiff's testimony that her daughter was normally with her when she went shopping.  *See id*. at 70 ("Well, my daughter will normally take me so that I don't have an episode, but we take it in short spurts. If I'm not feeling good, I'll go out to the car while she pays for it or something like that, but she'll take me grocery shopping.  She's normally with me when I do that.").  Therefore, the ALJ's failure to offer any discussion explaining how Plaintiff's testimony was inconsistent with her daily activities falls short of the substantial evidence standard.

Next, Plaintiff asserts the ALJ erred in discounting her testimony on the grounds of conservative treatment.  (Doc. 18 at 3-4).  Plaintiff claims the ALJ mislabeled her fairly extensive care, prescription medication, home exercises, physical therapy, and cervical traction, as conservative treatment.  *Id*. at 3.

Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of the impairment.  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints.  20 C.F.R. §§ 404.1530, 416.930; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).  However, "[a] claimant cannot be discredited for failing to pursue non-conservative treatment options" where "the record does not reflect that more aggressive treatment options are appropriate or available." *Lapeirre-Gutt v. Astrue*, 382 Fed. Appx. 662, 664 (9th Cir. 2010); *see Carmickle*, 533 F.3d at 1162 ("[A]lthough a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment.").

Here, the record reflects the ALJ reasonably relied on Plaintiff's record of conservative

1   treatment as a proper basis to discount Plaintiff's subjective complaints.  The ALJ properly noted

2   that Plaintiff was not prescribed severe pain medication, but instead, naproxen, and that Dr.

3   Bradford Anderson determined they would "hold off on adjusting her pain medication…"  (AR at

4   43, 663).  *Cf. Carmickle*, 533 F.3d at 1162 (ibuprofen deemed conservative) *with Bostock v.*

5   *Berryhill*, No. 2:18-cv-02565-JDE, 2018 WL 5906174, at *4 (C.D. Cal. Nov. 9, 2018)

6   (concluding that the use of narcotic pain medications is viewed as non-conservative) *and Teresa*

7   *M.W. v. Kijakazi*, No. 21-cv-00564-JC, 2022 WL 3586208, at *5 (C.D. Cal. Aug. 22, 2022)

8   (plaintiff's consistent treatment with narcotic pain medications over a four-year period coupled

9   with multiple epidural steroid injections did not qualify as conservative treatment); *see Warre v.*

10   *Comm'r of Soc. Sec. Admin.,* 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be

11   controlled effectively with medication are not disabling).  The ALJ's determination that

12   Plaintiff's treatment with naproxen constituted conservative treatment was proper.

13      The ALJ also properly discounted Plaintiff's testimony based on the conservative nature

14   of her home exercises, physical therapy, and cervical traction treatments.  *See Smartt*, 53 F.4th at

15   500 (suggesting "physical therapy, temporary use of a neck brace and wheelchair, and ongoing

16   pain medication" constitutes conservative treatment); *Cervantes v. O'Malley*, No. 1:20-cv-

17   001446-JLT-BAM, 2024 WL 3569543, at *7 (E.D. Cal. July 26, 2024) (the record typically

18   demonstrated that a conservative combination of physical therapy, pain medication, and muscle

19   relaxants appeared effective for treating Plaintiff's back pain); *Walter v. Astrue*, No. EDCV 09-

20   1569 AGR, 2011 WL 1326529, at *3 (C.D. Cal. Apr. 6, 2011) (ALJ permissibly discounted

21   plaintiff's allegations of pain based on conservative treatment of medication, physical therapy,

22   and injection).

23      In reply, Plaintiff argues the ALJ's assessment of conservative treatment should be

24   ignored because "the evidence in the case at bar includes x-rays which confirm erosions of both

25   the inferior facet joint of the left shoulder, as well the greater tuberosity of the medial facet."

26   (Doc. 18 at 3).  Specifically, Plaintiff claims Dr. Anderson observed Plaintiff had a decreased

27   range of motion of her neck and left shoulder, with tenderness in her neck, left shoulder, and left

28   side.  (Doc. 18 at 3-4) (citing AR at 659)).  Plaintiff asserts Dr. Anderson observed atrophy of the

1   supraspinatus and infraspinatus muscles on the left side and diagnosed Plaintiff with cervical

2   spondylosis with radiculopathy and disorder of the left rotator cuff.  (Doc. 18 at 4) (citing AR at

3   659)).

4          The Court finds Plaintiff's argument is unavailing.  While Dr. Anderson did identify the

5   above limitations, he only recommended conservative treatment.  Specifically, Dr. Anderson

6   recommended Plaintiff continue physical therapy and pain medication, ordered a pneumatic

7   cervical traction unit for Plaintiff to use at home, use moist heat on her neck, undergo an injection

8   for her pain, recommended acupuncture treatments, and proffered that a TENS unit could help

9   her.  (AR at 660, 663, 665-66, 669).  The Court also notes that Plaintiff testified somebody was

10  "talking about wanting to fuse [her] neck vertebrate together."  *Id*. at 60.  However, Plaintiff

11  points to nothing in the record to suggest that aggressive treatment of her conditions was pursued.

12  *See generally* (Docs. 15, 18).  Therefore, the ALJ properly rejected Plaintiff's testimony based on

13  her conservative treatment.

14         Defendant argues the ALJ properly considered Plaintiff's improvement with treatment as

15  a separate reason to discount Plaintiff's testimony.  (Doc. 17 at 6-7).  A claimant's improvement

16  with treatment is "an important indicator of the intensity and persistence of…symptoms."  20

17  C.F.R. § 404.1529(c)(3).  As discussed above (*supra* 14), impairments that can be controlled

18  effectively with medication generally are not disabling for the purpose of determining eligibility

19  for social security benefits.  *Warre*, 439 F.3d at 1006.  Symptom improvements, however, must

20  be weighed within the context of an "overall diagnostic picture."  *Holohan v. Massanari*, 246

21  F.3d 1195, 1205 (9th Cir. 2001); *see Lester*, 81 F.3d at 833 ("Occasional symptom-free

22  periods…are not inconsistent with disability.").

23         The ALJ rejected Plaintiff's reports of pain noting that Plaintiff had conceded that her

24  treatment "was beneficial."  (AR at 43).  The ALJ highlighted that "[d]espite [Plaintiff's] reports

25  of severe pain, treatment notes document reports of pain varying from 0 to 3 on a scale of 10, and

26  she was not prescribed severe pain medication."  *Id*. at 43.  While some of the treatment notes

27  referenced by the ALJ indicate that Plaintiff reported little to no pain in 2017 and early 2019 (AR

28  at 349, 357, 366, 460, 469, 474), the ALJ did not address a medical record from Dr. Anderson in

July 2020 (AR at 665) indicated that Plaintiff's alleged pain was not improving.  Rather, Dr. Anderson found that "[o]n a scale from 0-10, the patient['s] pain is usually between 2-7 on the visual analog scale" and that with the use of pain medication like ibuprofen she gets about 30% to 40% pain relief.  *Id*. at 665.  Dr. Anderson's assessment of Plaintiff's pain is above the ALJ's reliance on treatment notes documenting reports of pain varying from 0 to 3.  *Id*. at 43; *see id*. at 659 ("On a scale from 0-10, the [patient's pain] fluctuates between 1-9 on the visual analog scale. On average her pain has been about 5.").

The ALJ is not permitted to "cherry-pick" the evidence in the record to construct a result. *See Holohan*, 246 F.3d at 1207 (reversing ALJ's selective reliance on certain evidence in the record while ignoring many other records supporting the plaintiff's claim).  The Court finds the ALJ's reliance on records indicating improvement with treatment and failure to address reports of higher pain do not, standing alone, constitute a specific, clear, and convincing reason to discount Plaintiff's symptom testimony.

Defendant also argues that the ALJ properly rejected Plaintiff's testimony based on the objective medical evidence in the record.  (Doc. 17 at 5).  In contrast, Plaintiff contends that the ALJ simply recited Plaintiff's medical records and failed to specify which testimony she found not credible and "then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination."  (Doc. 15 at 13, quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 488 (9th Cir. 2015)).  An ALJ properly may rely in part on inconsistencies between a claimant's testimony and the objective medical evidence in discounting the claimant's testimony. *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009); *cf. Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (an ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence).

Here, the ALJ summarized Plaintiff's testimony (AR at 42) and then recited treatment notes, objective diagnostic studies, and clinical findings (*id*. at 43) as grounds for discounting Plaintiff's testimony.  Specifically, the ALJ found Plaintiff's objective diagnostic studies revealed no acute findings and an x-ray study of Plaintiff's left shoulder was "considered essentially

1   unremarkable." (AR at 43).  The ALJ acknowledged Plaintiff had clinical findings of left

2   shoulder tenderness with a moderately reduced range of motion.  *Id.*  However, the ALJ also

3   noted Plaintiff had clinical findings of normal gait, normal neck examination, normal respiratory

4   examination, no edema, visually normal extremities, normal heart sounds, 5/5 motor strength in

5   bilateral upper and lower extremities, and no gross sensory or motor deficits.  *Id.*

6        The Court finds the ALJ sufficiently explained her reasons for discounting Plaintiff's

7   symptom testimony based in part on the objective medical evidence. The Court can readily follow

8   her reasoning and meaningfully review those reasons.  *Guthrie v. Kijakazi*, No. 21-36023, 2022

9   WL 15761380, at *1 (9th Cir. Oct. 28, 2022) (citing *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th

10  Cir. 2022) (stating that the court considers "the ALJ's full explanation" and the "entire record"));

11  *see Mazon v. Comm'r of Soc. Sec.*, No. 1:22-cv-00342-SAB, 2023 WL 3177797, at *7 (E.D. Cal.

12  May 1, 2023) (the ALJ's sequence of summarizing evidence followed by giving specific findings

13  followed a conventional organization for the ALJ's decision writing which is sufficiently clear for

14  judicial review).  Accordingly, the Court finds that the ALJ properly discounted Plaintiff's

15  testimony based in part on the objective medical evidence in the record.

16       In conclusion, the ALJ provided specific, clear, and convincing reasons to discount

17  Plaintiff's symptom testimony based on conservative treatment the objective medical evidence,

18  and any reason that the ALJ provided that did not meet that standard amounts to harmless error.

19  *Carmickle*, 533 F.3d at 1163 (upholding an adverse credibility finding where the ALJ provided

20  four reasons to discredit the claimant, two of which were invalid); *Batson v. Comm'r of Soc. Sec.

21  Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (affirming a credibility finding where one of several

22  reasons was unsupported by the record).

23                              **V.    CONCLUSION**

24       A reviewing court should not substitute its assessment of the evidence for the ALJ.

25  *Tackett*, 180 F.3d at 1098.  On the contrary, a reviewing court must defer to an ALJ's assessment

26  as long as it is supported by substantial evidence and proper analysis.  For this and the reasons set

27  forth above, IT IS HEREBY ORDERED:

28       1.  Plaintiff's motion for summary judgment (Doc. 15) is DENIED;

2. The decision of the Commissioner of Social Security is AFFIRMED; and

3. The Clerk of the Court is directed to enter judgment in favor of the Commissioner of Social Security and to close this case.

IT IS SO ORDERED.

Dated:   **October 11, 2024**

_____
UNITED STATES MAGISTRATE JUDGE